**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-20079-CM |
| ) | |
| TROY A. GREGORY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Before the court is the government's Motion in Limine (Omnibus) to Exclude Irrelevant, Prejudicial, or Otherwise Inadmissible Evidence (Doc. 39). The motion contains nine types of evidence the government seeks to exclude under the Federal Rules of Evidence. The motion is fully briefed, and the court is prepared to rule.

### I.      Evidence regarding the government's pre-Indictment charging decisions

The government moves to exclude evidence that it twice declined to prosecute defendant prior to his Indictment. Defendant argues those prior charging declinations are relevant to "impeaching a government agent, or summary witness, that seeks to testify about the details of the years-long criminal investigation[.]" (Doc. 46, at 2.) The government maintains that this evidence is "irrelevant, unfairly prejudicial, and potentially misleading and confusing to the jury and should be excluded under [Federal] Rules [of Evidence] 401 and 403." (Doc. 49, at 3.)

Several circuits have upheld the exclusion of evidence of prior charging decisions on those grounds. *See United States v. Reed*, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases). This court does not believe the Tenth Circuit would break from its unanimous sister circuits. As the Eleventh Circuit put it:

-1-

> The government's decision not to prosecute a defendant on certain charges reflects, *at best*, the government's *opinion* that the defendant is not guilty. Thus, the opinion has no more evidentiary value than the opinion of the defendant's attorney, expressed during argument to the jury, that the defendant is not guilty. Even if such evidence is relevant, it would not be admissible under Rule 403.

*United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990) (emphasis in original). For these reasons, the court will exclude evidence of the government's prior charging declinations under Rules 401 and 403.

## II. Evidence regarding the government's charging decisions as to unindicted co-conspirators

The government moves to exclude evidence and argument of the government's decision not to charge other individuals who may have engaged in the same criminal conspiracy. Defendant first argues this evidence is admissible during cross-examination of the unindicted co-conspirators referenced in the Indictment (assuming they testify). The government does not contest this assertion. If a co-conspirator testifies at trial, defendant may cross-examine the witness about the government's decision not to charge him or her. To the extent defendant wishes to introduce the evidence in another context, the court will address the issue at trial.

## III. Evidence and argument about the 2008 OCC Report of Examination of the University National Bank

In briefing this issue, the parties reached an agreed stipulation. Defendant offered to stipulate that it will agree not to introduce the 2008 OCC Report of Examination or elicit testimony about it if the government also agrees not to introduce or offer evidence of other OCC reports, the 2009 formal agreement, and third-party reports to include the 2010 BKD Report. The government agreed, provided it retained the right to offer that testimony should defendant open the door by implicating those materials.

## IV. Admission of State Court Rulings in a Civil Case between Private Third-Parties

First, some background. For much of the investigation underlying this Indictment, there was a parallel civil case proceeding in state court. Neither defendant nor the government were parties to that case. In February 2016 in Douglas County, Kansas District Court, Judge Richard M. Smith issued a Journal Entry and Memorandum Decision ("Civil Order") that included statements about the credibility of John Duncan. (Doc. 23-2.) Judge Smith devoted an entire, lengthy section entitled "The Affidavit of John Duncan." (*Id*. at 4-12.) The entire section is relevant to the court's reasoning, but the court will not reproduce it here. In it, Judge Smith meticulously analyzes Duncan's testimony in that case, as of deciding summary judgment. Judge Smith did not find Duncan credible. He outlined numerous inconsistencies in Duncan's testimony both in that case and in an answer filed by Mr. Duncan, proceeding pro se, in *another* parallel civil case on the same facts in federal court. *See Enneking v. Univ. Nat. Bank*, No. 13-4070-JTM.

The government moves to exclude the Civil Order as inadmissible hearsay under Rule 802. In its reply brief, the government clarifies that it moved primarily to "prohibit the defendant from introducing a state judge's summary judgment ruling as evidence of any *fact* in this case." (Doc. 49, at 6 (emphasis added).) *See, e.g., United States v. Grey*, 891 F.3d 1054 (D.C. Cir. 2018); *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) (A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'" (quoting *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004)); *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1567 (7th Cir. 1987) ("We are aware that, with immaterial exceptions, civil judgments are said not to be usable in subsequent proceedings as evidence of the facts underlying the judgement; for as to those facts, the judgement is hearsay."). Defendant offered no argument that the Civil Order be admitted as evidence to prove any underlying facts in this case. The court agrees that the findings of fact or conclusions of law in the Civil Order

-3-

cannot be used as evidence of any *fact* in <u>this</u> case.  In particular, defendant may not offer the outcome of the Civil Order as evidence.

But defendant primarily argues the Civil Order constitutes valid impeachment evidence under Rules 607, 608(a), and 608(b), which goes to the credibility and truthfulness of John Duncan, one of defendant's co-conspirators and a government witnesses in this case.  The government concedes defendant may cross-examine Mr. Duncan on any statement he has made, including those in the affidavit referenced in the Civil Order.  But the government opposes defendant's ability to impeach Duncan by using the statements in the Civil Order as evidence concerning Duncan's credibility.  The court must first decide whether the Civil Order may be used to impeach Duncan on cross-examination.

Defendant relies on *United States v. Woodard*, 699 F.3d 1188, 1194 (10th Cir. 2012).  There, the government filed a similar, pretrial motion in limine concerning a prior determination made by a different federal district court judge that a state vehicle inspector was not credible.  *Id*. at 1192.  The prior federal judge heard the inspector's testimony in a suppression hearing and subsequently issued an order stating "[t]his Court does not believe [the inspector] detected the odor of raw marijuana…."  *Id*. (record citation omitted).  The district court in *Woodard* precluded defendant from cross-examining the inspector about that credibility determination.  On appeal, Woodard claimed the district court's ruling violated his Sixth Amendment right to "be confronted with the witnesses against him."  *Id*. at 1194 (citing U.S. Const. amend. VI.).  To decide that issue, the Tenth Circuit had to decide whether the proposed cross-examination of the inspector was otherwise appropriate.  "Although we have not addressed the issue of whether past judicial credibility determinations are admissible under Rule 608(b)," the Tenth Circuit said, "several of our sister circuits have done so and held that they are."  *Id*. at 1195 (collecting cases).  Ultimately, the Tenth Circuit adopted the Second Circuit's factor-based test to analyze admission under Rule 608(b):  (1) whether the prior judicial finding addressed the witness's veracity in that specific case

-4-

or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5) how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible. *Id*. at 1195 (quoting *United States v. Cedeño*, 644 F.3d 79, 82–83 (2d Cir.), *cert denied*, ─── U.S. ────, 132 S. Ct. 325 (2011)) (internal quotation marks omitted).

Here, the court finds that all the *Cedeño* factors favor allowing cross-examination on Judge Smith's credibility determination of Duncan. First, the prior judicial finding can be read to express Duncan's lack of veracity generally, as he submitted contradictory testimony in multiple cases. Second, Duncan's testimony involved the same subject matter. Third, Duncan testified under oath in his deposition and by executing the affidavit. Fourth, his testimony was significant; it involved the issues of this case—how he and defendant made misrepresentations to secure loans to build an apartment complex. Fifth, his testimony was given in quick succession.[1] Sixth, Duncan had the same motive to make his statement as he does here: helping the government to potentially reduce his sentence.[2] Seventh, Duncan has not offered an explanation for his less-than-truthful testimony, but because he will have the opportunity to do so upon cross-examination, this factor weighs in favor of cross-examination. These findings find additional support in the below analysis of the government's arguments.

The government's attempts to distinguish *Woodard* are unpersuasive. The government first claimed it could find no Tenth Circuit case on point. (Doc. 39, at 14). But when confronted with

---

[1] The only substantial break in time will be the time between his 2015 deposition and his eventual testimony in this case.
[2] There is evidence in the record before the court that the lawyers in the Civil Case negotiated with prosecutors and Duncan's public defender to secure his affidavit for use in the Civil Case in exchange for a reduced amount of restitution.

*Woodard*, which is certainly on point, the government was unable to counter it. It did not even attempt to analyze the *Cedeño* factors, ignoring them almost entirely. The government instead relies on *United States v. White*, 692 F.3d 235, 249 (2d Cir. 2012), as amended (Sept. 28, 2012). In *White*, the government advanced an almost identical argument for why *Cedeño* does not apply. The Second Circuit flatly rejected that argument, writing: "A finding that a witness is not credible is not fundamentally different from a finding that the witness lied. It often just reflects a fact finder's desire to use more gentle language. Nothing, moreover, suggests that *Cedeño* is limited to explicit findings that a witness lied." *Id*.

This is why the government stresses that Judge Smith did not *explicitly* rule on Duncan's credibility. It is true there is no explicit or direct statement that Judge Smith found Duncan not to be credible. But the court believes this is due to Judge Smith's "desire to use more gentle language." *Id*. Indeed, the court does not believe any reasonable person can read the Civil Order and believe Judge Smith did not make a credibility determination of Duncan. Judge Smith noted Duncan's affidavit was "highly detailed," yet noted in Duncan's deposition six months later "Duncan is virtually unable to provide any particulars at all." (*Id*. at 4.) He found both Duncan's affidavit and deposition testimony "diametrically opposed" to statements contained in pleadings filed in the *other* civil case proceeding in federal court. (*Id*. at 7.) Judge Smith also explicitly called out a lie in Duncan's affidavit.

Nevertheless, the government urges the court to read the Civil Order not as a credibility determination of Duncan but as a rebuke of the lawyers who drafted Duncan's affidavit. This the court cannot do. The fact is Duncan made minor changes and ultimately executed the affidavit, swearing under penalty of perjury that the statements he made were truthful. Judge Smith found they were not, and in one instance his testimony *could not* be truthful.

-6-

Even if cross-examination is appropriate, however, the government argues such evidence is unduly prejudicial under Rule 403. In *Woodard*, the Tenth Circuit found the probative value of cross-examination substantially outweighed the risk of prejudice. *Woodard*, 699 F.3d at 1196. The government argues that if the court admits the Civil Order for impeachment purposes "[t]he danger to the litigants and a fair trial is that the jury would forgo their own determination of whether the prior statements were inconsistent and simply take the judge's word for it." (Doc. 49, at 9.) The court does not believe there is any danger here.[3] The court finds the probative value of the truthfulness of Duncan, the only named co-conspirator in the Indictment, substantially outweighs any of the dangers in Rule 403.

Finally, the government requests the court issue a limiting instruction regarding any evidence of Judge Smith's credibility determination. At this time, the court will not rule as to whether a limiting instruction is necessary. The government should raise that when submitting its proposed jury instructions and during the instruction conference.

## V.     Evidence and argument about lender negligence or fault

The government seeks to exclude "any evidence or argument that the lenders were negligent, failed to investigate the various bank submissions or follow internal or standard banking policies and procedures, or that they would have made the same decisions even if they knew the submissions were false." (Doc. 39, at 17.) Defendant counters that it should be able to question witness from the lenders about certain items in the documentation that defendant prepared and presented to them in order to prove the alleged misrepresentations were not misrepresentations or, if they were, they were not *material* misrepresentations.

---

[3] The government relies on *Schultz v. Thomas*, 832 F.2d 108, 111 (7th Cir. 1982). But *Schultz* explicitly states, which the government omits from its summary: "Unless that basis or source demonstrates that the opinion is rationally based on the perception of the witness and would be helpful to the jury in determining the fact of credibility, it should not become part of the proof in the case." *Id*. (citing *Dotson*, 799 F.2d at 193). Here, Judge Smith's perception was rationally based on the perception of the witness, Duncan, and that determination is helpful to the jury in determining Duncan's credibility. His basis was not merely an opinion between two, independent witnesses but between Duncan's own inconsistent testimony.

Regardless, without knowing the line of questioning defendant wishes to pursue, the phrasing of those questions, and the context within which the testimony is being given (i.e. what testimony has been heard by the jury), the court cannot determine whether the intended evidence goes to materiality or to the lender's negligence and fault. The parties may revisit this issue again before trial by filing a renewed motion in limine if the parties can provide more specificity.

## VI.     Potential Penalties

The government requests defendant be prohibited from making any reference to the potential penalties during the trial including the sentencing impact of the loss amount, minimum sentence, or maximum sentence associated with the charges. Defendant says he does not intend to introduce evidence regarding penalties at trial, with the caveat that he be allowed to use the plea agreements of two potential witnesses, which themselves contain potential penalties. The government agrees defendant may use the plea agreements in cross-examination of those witnesses. The court therefore finds this issue moot.

## VII.    Law enforcement summaries as impeachment testimony

It appears there is some agreement between the parties about the fact that law enforcement summaries of witness interviews can be used as the basis for cross-examination questions. Despite the government's reply, the court believes the parties agree on the bounds of using law enforcement summaries during cross-examination. To the extent any disagreements remain, they are best resolved at trial.

## VIII.  Defendant's out-of-court statements

The government requests the court: (1) admit defendant's out-of-court statements offered against him as statements by a party-opponent under Federal Rule of Evidence 801(d)(2)(A); and (2) preclude defendant's use of his own exculpatory out-of-court statements as inadmissible hearsay. Defendant requests that the court receive more information about the statements at issue before ruling.

The government agrees and proposes a possible solution: it will submit to the court and the defendant each specific excerpt from defendant's prior civil deposition that the government intends to introduce, and in exchange, defendant will provide the court and the government with any additional portions of defendants depositions along with justifications for why defendant believes they are necessary to avoid misleading the jury by explaining or otherwise putting the government's excerpts into context in accord with Rule 106. Therefore, the court will deny this portion of the motion without prejudice. The parties may file another motion in limine before trial using a procedure similar to the government's proposed solution.

IX. **Civil Depositions from the Civil Case**

The court rejected defendant's argument set forth in his Motion to Dismiss the Indictment (Doc. 23) that attorneys from Stevens & Brand, LLP were government agents. This appears to resolve defendant's argument that some civil depositions may be admissible under Fed. R. Evid. 804(b)(1). Even if it does not, the motion, as the government concedes, is premature as to the admission of depositions under Rule 807. Therefore, the court denies this portion of the motion without prejudice. The parties may revisit this issue in another pretrial motion in limine or at trial.

**IT IS THEREFORE ORDERED** that the government's Motion in Limine (Omnibus) to Exclude Irrelevant, Prejudicial, or Otherwise Inadmissible Evidence (Doc. 39) is granted in part and denied in part.

Dated this 15th day of January, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**